Donald E. RIGAZIO, Jr., Donald
E. Rigazio, Sr., and Nancy
Rigazio, Appellants,

v.

ARCHDIOCESE OF LOUISVILLE, Arch-
diocesan of Louisville School Board,
James C. Griffith, Deacon, St. Raphael
School Board, and St. Raphael Church
and School, Appellees.

No. 90–CA–2718–MR.

Court of Appeals of Kentucky.

May 14, 1993.

John J. Llewellyn, Louisville, for appellants.

John J. Ford, Bixler W. Howland, Blackburn & Howland, Louisville, for Archdiocese of Louisville and Archdiocesan of Louisville School Bd.

Robert M. Brooks, Edward H. Stopher, Boehl, Stopher, Graves and Deindoerfer, Louisville, for St. Raphael School Bd. and St. Raphael Church and School.

C. Thomas Hectus, Williams & Wagoner, Louisville, for James C. Griffith.

Before EMBERTON, GARDNER and WILHOIT, JJ.

WILHOIT, Judge.

This is an appeal from orders of the Jefferson Circuit Court granting a motion to dismiss in favor of the appellees, James C. Griffith, the Archdiocese of Louisville, the Archdiocesan of Louisville School Board, St. Raphael School Board, and St. Raphael Church and School, against the appellants, Donald E. Rigazio, Jr., Donald Rigazio, Sr., and Nancy Rigazio, and granting summary judgment in favor of all the appellees except Griffith.

This action was instituted on September 8, 1988, and arose from the appellee James C. Griffith's admitted acts of sexual abuse against the appellant Donald Rigazio, Jr. (Donald). Claims of battery, intentional infliction of emotional distress, and negligence were asserted in the complaint. Donald was born on January 30, 1964. It is undisputed that Griffith sexually abused Donald from June 1974 through January 1977 while Donald was a grade school student at St. Raphael School. This abuse occurred while Donald was between 10 and 13 years of age. Griffith was reassigned from his position at St. Raphael's in January 1977, and never again saw Donald.

Donald entered the Army on January 3, 1982. He turned 18 years of age on January 30, 1982, and he was discharged from the Army on January 17, 1985. On September 9, 1987, Donald attempted suicide. In a statement to a police officer investigating the suicide attempt, Donald, according to his testimony, for the first time revealed that he had been sexually abused. There was other evidence, however, that he had revealed this fact to family members in 1986. While there was medical testimony that Donald had suppressed the memory of the abuse into his subconscious mind and did not remember it until the suicide attempt, there was, of course, also medical testimony casting doubt on whether that had occurred. On November 13, 1990, the circuit court entered an order dismissing the appellants' suit, holding that it was time barred under the one-year limitation period of KRS 413.140(1)(a). On December 5, 1990, following a timely motion pursuant to CR 59, the circuit court also entered summary judgment in favor of all of the appellees except Griffith.

It is undisputed that Donald's infancy at the time of the abuse tolled the statutes of limitations until January 30, 1982, the date of his eighteenth birthday. The appellants instituted their action on September 8, 1988, well over the one-year limitation period for the claims of battery and negligence (KRS 413.140) as well as the five-year limitation period for the "tort of outrage." (KRS 413.120) The appellants argue, however, that Donald has suffered under certain disabilities since the date of his eighteenth birthday, and that these disabilities should be tacked on to his infancy disability to further toll the limitations period.

The appellants claim that the statutes of limitations were tolled by KRS 413.170(1), which provides that the limitations period is tolled if at the time the action accrued, the person entitled to sue was of unsound mind. They presented medical testimony that Donald suffered from post-traumatic stress disorder, and that he had repressed the memory of the abuse until September 9, 1987, the day of his attempted suicide. They assert that this post-trau-

matic memory loss tolled the statutes of limitations.

The term "unsound mind" within the meaning of KRS 413.170(1) has been interpreted by our Supreme Court to mean that the person claiming the disability must show that he has been rendered incapable of managing his own affairs. *Southeastern Kentucky Baptist Hosp. v. Gaylor,* Ky., 756 S.W.2d 467 (1988). The circuit court held that "[t]he mere fact that Donald experienced a repression syndrome is not synonymous with being of unsound mind." Even if this were incorrect, at the time the acts of abuse occurred, Donald's cause of action accrued and he was then well aware of the abuse. His memory of the abuse became suppressed only after he was older and in high school. Thus, he was not suffering from post-traumatic memory loss when the cause of action accrued as required by the statute. *See Sharp v. Stephen's Committee,* 21 Ky.L.Rptr. 687, 52 S.W. 977 (1899); *Kingman's Committee v. First National Bank of Mayfield,* 246 Ky. 404, 55 S.W.2d 39 (1932).

The appellants next claim that the statutes of limitations were tolled by reason of KRS 413.190(2), which states as follows:

(2) When a cause of action mentioned in KRS 413.090 to 413.160 accrues against a resident of this state, and he by absconding or concealing himself or by any other indirect means obstructs the prosecution of the action, the time of the continuance of the absence from the state or obstruction shall not be computed as any part of the period within which the action shall be commenced.

The appellants assert that Griffith, by telling Donald that he should not tell anyone of the abuse because he would not be believed, attempted to conceal his acts of abuse and obstruct the appellants from pursuing this action.

■ Obstruction by "other indirect means" within the meaning of KRS 413.-190(2) means an "act or conduct which in point of fact misleads or deceives plaintiff and obstructs or prevents him from instituting his suit while he may do so." *Adams v. Ison,* Ky., 249 S.W.2d 791, 792

(1952). The typical example is where an injured employee fails to timely file suit because of reliance on the employer's promise of settlement. *See Clover Splint Coal Co. v. Lorenz,* 270 Ky. 676, 110 S.W.2d 457 (1937). Merely instructing Donald not to tell is not obstruction within the meaning of the statute. Obstruction might also occur where a defendant conceals a plaintiff's cause of action so that it could not be discovered by the exercise of ordinary diligence on the plaintiff's part. *St. Clair v. Bardstown Transfer Line,* 310 Ky. 776, 221 S.W.2d 679 (1949). Griffith's action in instructing Donald not to tell anyone does not amount to such obstruction.

■ The appellants also assert that the statutes of limitations did not begin to run until Donald "discovered" his injury, and Donald did not discover his injury until after his suicide attempt in September 1987, at which time he claims he first recalled the abuse. The discovery rule, adopted in Kentucky in *Tomlinson v. Siehl,* Ky., 459 S.W.2d 166 (1970), and *Hackworth v. Hart,* Ky., 474 S.W.2d 377 (1971), at first applied only to claims arising from medical malpractice. In 1979, the Supreme Court extended the rule "to tort actions for injury resulting from a latent disease caused by exposure to a harmful substance." *Louisville Trust Co. v. Johns–Manville Products Corp.,* Ky., 580 S.W.2d 497, 499 (1979). In 1980 KRS 413.-245 was enacted applying a discovery rule to all claims of professional malpractice. Neither the Supreme Court nor the General Assembly has further extended the discovery rule. It should again be noted that at the time Donald's cause of action accrued, and for sometime thereafter, he was both aware of the abuse and past the age of reason. The fact that his memory of these events was thereafter suppressed, only to return years later, would not seem to present a circumstance falling within the discovery rule which relates to injuries which cannot be discovered with reasonable diligence.

■ The final ground put forth by the appellants to support their contention that their claims are not barred by limitations is

that the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.A. App. § 525, tolled the applicable statutes of limitation during the period of Donald's military service. We agree as far as Donald is concerned. Nevertheless, this action was brought more than one year after his discharge from the military; therefore, those claims otherwise barred by KRS 413.140 would not be saved by the federal statute. As to the claim based on the tort of outrage, to which KRS 413.120 applies, *see Craft v. Rice*, Ky., 671 S.W.2d 247 (1984), the five-year limitation period normally would have begun to run on January 30, 1982, when Donald attained his majority. Since he was then in the military, the running of period was tolled until his discharge on January 17, 1985. At the time this action was begun on September 8, 1988, the five-year limitation period had not expired. Donald's absence from the military without official leave from August 15 to September 1, 1982, at most would have denied him the protection of the Relief Act during that period. *Harriott v. Harriott*, 211 N.J.Super. 445, 511 A.2d 1264 (1986), and other similar cases cited by the appellees do not hold otherwise.

█ The record contains no evidence whatsoever to raise an inference that the Archdiocese, the Archdiocesan School Board, St. Raphael Church and School, or the St. Raphael School Board engaged in any extreme and outrageous conduct intentionally or recklessly inflicting emotional distress on any of the appellants. *See Craft v. Rice*, Ky., 671 S.W.2d 247 (1984), in which § 46 of the *Restatement (Second) of Torts* (1969) was adopted, and *Humana of Kentucky, Inc. v. Seitz*, Ky., 796 S.W.2d 1 (1990). With respect to the appellee Griffith, a more difficult question is presented. This involves consideration of the precise nature of the tort of inflicting extreme emotional distress upon another by outrageous conduct, sometimes referred to as the "tort of outrage."

Before taking up this consideration, however, we must deal with the appellee Griffith's assertion that any question as to the trial court's dismissal of the claim based on the tort of outrage is not properly before us under CR 52.04 because the appellants failed to request findings of fact on that issue pursuant to CR 52.02. We see the situation not as one involving an absence of factual findings on essential elements of the case, but rather one in which the court's legal conclusion as to the running of the five-year statute of limitation is unsupported by the facts. *See* CR 52.03.

█ We have no problem concluding that because of the relationship between Donald Rigazzio and Mr. Griffith and their respective ages at the time of the sexual abuse, the conduct of Mr. Griffith could be found to be extreme and outrageous. Nevertheless, Mr. Griffith argues that any emotional distress suffered by Donald was incident to the commission of the intentional torts of assault and battery by the appellee, and, therefore, the tort of outrage is not applicable to the situation. He supports this argument by § 47 of the *Restatement (Second) of Torts* (1965), which provides

[e]xcept as stated in §§ 21–34 [which deal with assault] and in § 46 [which defines the "tort of outrage"], conduct which is tortious because intended to result in bodily harm to another or in the invasion of any other of his legally protected interests does not make the actor liable for an emotional distress which is the only legal consequence of his conduct.

Comment a. to this section explains that

[t]he rule stated in § 46 creates liability only where the actor intends to invade the interest in freedom from severe emotional distress. The fact that the actor intends to invade some other legally protected interest is insufficient to create liability where the only effect of his act is the creation of emotional distress....

█ This Comment is somewhat perplexing in that it seems to contradict § 46(1) of the *Restatement (Second) of Torts* (1965) which makes an actor liable where by his extreme and outrageous conduct he "intentionally or *recklessly* causes severe emotional distress to another." (Emphasis added.) Taking into account the history of the tort of outrage, and its reason for being as

son for being as a "gap-filler" providing redress for extreme emotional distress in those instances in which the traditional common law actions did not, we believe that § 47 recognizes that where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie. Recovery for emotional distress in those instances must be had under the appropriate traditional common law action. The tort of outrage was intended to supplement the existing forms of recovery, not swallow them up.

There is no evidence from which it could be inferred that the appellee Griffith intended only to invade Donald's interest in freedom from emotional distress. His intent plainly was his own sexual gratification accomplished by means of assault and battery by which he invaded Donald's legally protected interests in being free from the apprehension of harmful or offensive bodily contact and in being free from such contact itself. While recovery for emotional distress caused by the assault or battery would be allowable as an element of damages in an action based upon those torts, *see Restatement (Second) of Torts* § 47 cmt. b. (1965), there is no viable action for the tort of outrage under the facts before us.

The judgment of the trial court is affirmed.

All concur.