Tanya A. CHILDERS; Jeffrey
J. Childers, Appellants,

v.

Sandra F. GEILE, M.D.; Marshall
Emergency Services Associates,
P.S.C., Appellees.

No. 2009–SC–000790–DG.

Supreme Court of Kentucky.

June 21, 2012.

ya had miscarried their child when in fact she had not. The issue presented in this case is whether summary judgment for Appellees was proper because a claim for intentional infliction of emotional distress cannot be maintained when the same facts support a traditional tort claim. Because the tort of intentional infliction of emotional distress does not apply to these facts, the Court of Appeals is affirmed.

## I. Background

Appellant Tanya Childers, who was pregnant with her first child, woke around midnight on New Year's Eve in 2005 to find that she was bleeding profusely. An emergency call was made, and an ambulance transported her to Mary Chiles Hospital in Mt. Sterling, Kentucky. The emergency room physician on duty was the Appellee, Dr. Sandra Geile, who was employed by Appellee Marshall Emergency Services Associates.

On arrival, Tanya was taken to an exam room where she was examined by Dr. Geile, who told Tanya that she was having a miscarriage and had probably already lost the fetus. Both Tanya and her husband Jeffrey were upset prior to the examination, and continued to be after the bad news.

Dr. Geile testified that there were several signs which led her to diagnose fetal death: no movement of the fetus could be felt; no fetal heart tones; loss of the mucus plug; opening of the cervical os; loss of tissue; clots; and significant bleeding. In her deposition, Tanya disputed that Dr. Geile had checked for fetal heart tones and described her demeanor as very abrupt and matter of fact.

After being informed of the miscarriage, Tanya became very distraught and was crying loudly. Dr. Geile sent a nurse to the waiting room to get Jeffrey, but the doctor had left by the time he arrived,

Heidi Beth Engel, Charles Edward Johnson, Johnson & Engel, P.S.C., Winchester, KY, Anne Milton McMillin, Ewing, McMillin & Willis, PLLC, Louisville, KY, Counsel for Appellants.

Kenneth W. Smith, Johann Frederick Herklotz, Wellman, Nichols & Smith, PLLC, Lexington, KY, Counsel for Appellees.

Opinion of the Court by Justice NOBLE.

Appellants Tanya and Jeffrey Childers filed this action in Montgomery Circuit Court against the Appellees, Sandra F. Geile, M.D. and Marshall Emergency Services Associates, PSC, claiming severe emotional distress caused by the outrageous and intentional or reckless conduct of Dr. Geile when she told them that Tan-

leaving Tanya to tell him of their loss. Tanya continued to be so upset that the nurses asked Dr. Geile to order some medication; she prescribed Ativan to help blunt Tanya's distress about the miscarriage.

About an hour later, Dr. Geile reviewed the lab report, which showed that Tanya had normal blood levels of hCG. Dr. Geile testified that while a normal hCG is indicative of how advanced a pregnancy is, it does not indicate whether the fetus is alive when the test is taken. Appellants make much of this test, but offer no evidence that it indicated that the fetus was alive. Tanya testified that Dr. Geile did not report the results of the hCG test to her. Dr. Geile claims to have then consulted with Dr. Eastham, a consulting obstetrician, although this is not recorded in Tanya's chart. She further claims that Dr. Eastham recommended that she give Tanya Methergine to stop the bleeding and to have her follow up with her obstetrician. Tanya testified that Dr. Geile also did not report this to her, but rather that a nurse gave her the Methergine, explained that it was to stop bleeding, and told her to consult with her obstetrician.

Tanya remained in distress, crying throughout the next day, but she took the Methergine as prescribed. She called her obstetrician and told him she had miscarried. Out of concern that she may have retained tissue from the miscarriage, her obstetrician ordered her in for an immediate ultrasound. That test showed a fifteen-week-old fetus in breech position with a heart rate of 162 beats per minute.

Although Tanya and Jeffrey's emotions swung from despair to joy that the fetus was still alive, the obstetrician, however, warned that the Methergine Tanya had taken was not indicated for a live pregnancy because it causes contractions. Tanya was then placed on bed rest, but the contractions continued. The fetus was delivered five days later on January 5, 2006, and was unable to survive. Tanya testified that she continued to feel guilt because she took the Methergine, and that she became emotionally distraught at work whenever she thought about what had happened, for a long time after the miscarriage. As this continued, she was prescribed an antidepressant to assist with her distress.

Appellants filed suit first for medical negligence and the tort of outrage. The Complaint was later amended to only seek damages based on outrageous conduct. The Appellees filed two motions for summary judgment, the first of which was denied on February 6, 2008. In the second summary judgment motion, however, Appellees stipulated that, for the sake of the summary judgment alone, all the elements of the tort of outrage were met, but that the claim of outrageous conduct could not be brought because all the claims for emotional distress could properly be raised in a medical negligence claim. The trial court granted summary judgment, and this case was appealed. The Court of Appeals affirmed, citing *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295 (Ky.App.1993) and other related cases which refer to the tort of outrageous conduct as a "gap-filler." This Court granted discretionary review to resolve when the tort of intentional emotional distress is an appropriate claim.

## II. Analysis

This Court first recognized the tort of outrageous conduct, or intentional infliction of emotional distress, in *Craft v. Rice*, 671 S.W.2d 247 (Ky.1984).

The basis of the cause of action is intentional interference with the plaintiffs rights causing emotional distress, with or without personal injury in the traditional sense. If there has been physical injury with pain to the body or mind, it is incidental to the emotional distress

rather than essential to the cause of action as is the case in an action for personal injury. The plaintiff may have a cause of action for emotional distress from the intentional and unlawful interference with her rights, regardless of whether she suffers any bodily injury from such interference.

*Id.* at 249. Consequently, this Court adopted Section 46(1) of the *Restatement (Second) of Torts:* "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Id.* at 251.

### A. Craft v. Rice.

To understand the reasoning in *Craft,* which had as its primary issue the question of which statute of limitations applied to the action before the Court, the language from the opinion quoted above must be examined sentence by sentence. These three sentences provide a succinct summation of the tort of intentional infliction of emotional distress and when it is appropriate to bring the claim.

### 1. The basis of the cause of action is intentional interference with the plaintiffs rights causing emotional distress, with or without personal injury in the traditional sense.

To determine which statute of limitations applied, the Court had to look at what right the plaintiffs were seeking to protect, and under the facts of the case, whether there was a tort claim that would fit. The Crafts claimed that a former Boyd County sheriff harassed Mrs. Craft by keeping her under surveillance, telling her over the CB radio that he would put her husband in jail and forcing her vehicle into an opposing lane of traffic. Mr. Craft alleged that the ex-sheriff harassed him over the CB radio. He also alleged physical symptoms from the harassment. It

was undisputed that no touching ever occurred to either of the Crafts.

This Court found it "difficult to precisely label the tortious conduct presented here," *Craft,* 671 S.W.2d at 249, but concluded that the Virginia Supreme Court had recognized the appropriate tort based on the following elements: intentional or reckless conduct; conduct that is outrageous and intolerable because it offends against generally accepted standards of decency and morality; a causal connection between the conduct and emotional distress; and emotional distress which is severe. *Id.* (citing *Womack v. Eldridge,* 215 Va. 338, 210 S.E.2d 145, 148 (1974)). This was the tort of intentional infliction of emotional distress as it was set out in the *Restatement (Second) of Torts.*

Having concluded what the tort was, and recognizing it, this Court then found that the right being protected was the right to be left alone, and as an injury to rights, the five year statute of limitations applied to the tort. *Id.* at 251 ("There is a right to be free of emotional distress arising from conduct by another. Because the essence of the tort is the interference with this right and not whether any bodily harm results, the five-year statute of limitations applies.") The conduct at issue was held to be "harassment *intended to cause extreme emotional distress.*" *Id.* at 250 (emphasis added).

### 2. If there has been physical injury with pain to the body or mind, it is incidental to the emotional distress rather than essential to the cause of action as is the case in an action for personal injury.

By adopting the tort of intentional infliction of emotional distress, this Court recognized that physical impact, or personal injury, need not be present for a plaintiff to recover. In this tort, emphasis is placed on the emotional distress caused by

the conduct. If physical injury is present, then as the *Restatement* and *Craft* make clear, the physical injury is significant only if it results from the mental distress, such as the chronic diarrhea and colitis Mr. Craft reported. In more traditional torts such as battery or other types of personal injury, the gravamen is the physical touching or injury, which may also result in emotional distress. To this extent, a significant difference in the tort of intentional infliction of emotional distress is the focus of the inquiry. In this tort, the conduct at issue must intentionally or recklessly be done to cause *emotional distress*. The specific right being invaded is the right to be free of emotional distress caused by another's outrageous conduct.

Many other torts are grounded in negligence, such as medical malpractice, and can also be done recklessly, which can lead to a punitive damages instruction. Such torts traditionally have as a necessary element a physical injury or touching of a person. The conduct in question is not aimed at invading an individual's right to be free of emotional distress, but, for example, at treating the body.

But in the tort of intentional infliction of emotional distress, the conduct is aimed at causing emotional distress, thereby invading the victim's right to be free of emotional distress caused by that conduct. This occurs when the actor had the specific purpose of causing emotional distress (intentional) or intended a specific conduct and knew or should have known that it would cause *emotional distress rather than a personal (physical) injury* (recklessness). *Id.* at 249 (citing *Womack v. Eldridge*, 215 Va. 338, 210 S.E.2d 145, 148 (1974)) ("This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result."). The recklessness

aspect of *Craft* is indeed much closer to wanton conduct as it is set out in the Kentucky criminal statutes, but is in line generally with how most jurisdictions define *reckless* conduct in intentional infliction of emotional distress cases. *See, e.g., Almy v. Grisham*, 273 Va. 68, 639 S.E.2d 182, 187 (2007) ("actions of [defendants] were reckless, such that they knew or should have known their act of writing a false report likely would cause [plaintiff] severe emotional distress"); *Schick v. Ferolito*, 167 N.J. 7, 767 A.2d 962, 969 (2001) ("Recklessness, unlike negligence, requires a conscious choice of a course of action, with knowledge or a reason to know that it will create serious danger to others."). By adopting the *Restatement*, which uses the language included in the Virginia decision, the Court defined what it meant by "reckless" as used in this tort.

For this reason, it is logical to say that simple negligent conduct cannot give rise to the tort of intentional infliction of emotional distress, because the tortfeasor does not have the requisite mental state, having neither intended mental distress nor having been in a position to know or have reason to know that emotional distress would likely result. And when punitive damages are allowed because negligent conduct rises to the level of gross negligence, the conduct must be reckless and directly cause a personal injury, rather than the personal injury being the byproduct of emotional distress. If conduct causes severe emotional distress that then results in physical symptoms, then the claim does not lie in negligence but rather in intentional infliction of emotional distress, and in order to prevail, the conduct must be *extreme and outrageous* intentional or reckless conduct.

The focus in negligence actions is on physical injury rather than emotional distress. It therefore stands to reason

that a plaintiff cannot maintain *both* a negligence claim and an intentional infliction of emotional distress claim based on a single set of facts.[1] The relevant inquiry is whether the facts support simple or gross negligence leading to a personal injury, some other specific intent tort, or a claim that conduct was intended or the actor should have known was likely to cause emotional distress with any physical results being consequential.

### 3. The plaintiff may have a cause of action for emotional distress from the intentional and unlawful interference with her rights, regardless of whether she suffers any bodily injury from such interference.

■ Clearly, the conduct in question must be extreme, or outrageous and intolerable. It must violate generally accepted standards of decency and morality. It must be more than bad manners, and must cause severe emotional distress, not just hurt feelings. *Craft,* 671 S.W.2d at 249. Many instances of criminal conduct would likely qualify, but any conduct that shocks the conscience could be unlawful as well because others have the right to be free of such conduct, even if the conduct does not rise to the level of a crime.

The purpose behind recognizing the tort of intentional infliction of emotional distress was to allow a cause of action for severe emotional distress, caused by truly outrageous behavior, where there was no remedy because the victim did not have an injury directly to his person or intangible personal attributes such as reputation. *Id.* The tort is grounded in harassing or abusive behaviors that cause severe emotional distress. To this extent, it is a "gap-filler" tort, but it clearly can stand alone on appropriate facts. And while the intentional infliction of emotional distress could be pleaded alternatively, a litigant cannot prevail on both a negligence claim and an intentional infliction of emotional distress claim on the same set of facts.

### B. *Rigazio v. Archdiocese of Louisville.*

As Appellees point out in their brief, this Court has not spoken to the nature of the tort of intentional infliction of emotional distress since *Craft,* but a seminal case out of the Court of Appeals, *Rigazio v. Archdiocese of Louisville,* 853 S.W.2d 295 (Ky. App.1993), has been referenced in footnotes in *Stringer v. Wal–Mart,* 151 S.W.3d 781 (Ky.2004). Indeed, *Rigazio* has been widely cited for its holding that the tort of intentional infliction of emotional distress is a "gap filler" tort, and that if an action can lie in a "traditional tort," "the tort of outrage will not lie." 853 S.W.2d at 299. To that point, *Rigazio* is often quoted: "The tort of outrage was intended to supplement the existing forms of recovery, not swallow them up." *Id.*

Because *Rigazio,* like *Craft,* arose out of a statute of limitations question, the court determined that it must analyze the claims made to determine which statute applied. The plaintiffs had claimed battery, intentional infliction of emotional distress and negligence. *Id.* at 296. The action had been filed more than one year after Rigazio's eighteenth birthday, and thus the battery and negligence claims were barred. The facts of the case supported the conclu-

---

1. We recognize that circumstances may arise in which intentional or reckless acts causing emotional injury might occur close in time with negligent acts causing bodily injury. This opinion would pose no bar to recovery under both theories of liability where each tort is independently supported by its own facts, the physical injury is not merely a collateral consequence of the intentional or reckless conduct that caused the emotional distress, and the emotional injury is not merely a collateral consequence of the negligence that produced the physical injury.

sions that forced sexual contact on a minor was certainly outrageous conduct and undoubtedly the victim suffered emotional distress as a basis for the intentional infliction of emotional distress claim. The court thus had to determine if that action could go forward under the five-year statute of limitations for that tort as analyzed in *Craft*.

To do this, the court referenced the commentary to *Restatement (Second) of Torts*, Section 47, which explained that the rule set forth in Section 46 created liability "only where the actor intends to invade the interest in freedom from severe emotional distress." *Id.* at 298 (quoting *Restatement (Second) of Torts* § 47 cmt. a (1965)). The court went on to say that if an actor intends to invade some other legally protected interest and only emotional distress results, there is no liability. *Id.* In other words, emotional distress, standing alone, does not result in liability from an actor's conduct unless his intentional (or reckless) conduct is aimed toward causing emotional distress, is outrageous, and does cause severe emotional distress. Emotional distress as stand-alone damages can only be compensated through the tort of intentional infliction of emotional distress. In all other instances, emotional distress (mental pain and suffering) follows a personal injury, and is only compensable as a by-product of that injury.

In *Rigazio*, the court found that the evidence did not support the conclusion that the defendant intended only to cause the victim emotional distress. Instead, it found that the defendant intended his own sexual gratification, which he accomplished through assault and battery. *Id.* at 299. The emotional distress which naturally accompanied these acts was an element of damages based on those torts. *Id.* (citing *Restatement (Second) of Torts* § 47 cmt. b (1965)). Consequently, the court held that the evidence did not support a cause of action for intentional infliction of emotional distress, and thus the entirety of the action was time-barred.

However, other language in the opinion goes beyond the holding of *Craft*. The *Rigazio* court specifically stated that recovery for emotional distress, when it can be claimed under a traditional tort, can only be had under that tort. *Id.* ("[W]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie."). This is correct. Since emotional distress as an element of damages follows the infliction of a personal injury, the *same* emotional distress cannot be the basis of recovery in a stand-alone tort. If the emotional distress were the gravamen of the tort, then damages for the distress could be recovered, but only through a claim for intentional infliction of emotional distress, and only if the conduct were outrageous and the emotional distress severe. This is so because there has traditionally been no recovery for emotional distress absent a physical touching or injury to an intangible right.

Thus the notion that intentional infliction of emotional distress is a gap-filler tort is correct. It is also correct that it is a stand-alone tort under the right facts. This is not to say that it cannot be pleaded alternatively, but there can be only one recovery on a given set of facts. And while there is a much longer statute of limitations than for traditional torts, as *Rigazio* demonstrates, a complaint cannot be saved from limitations by pleading intentional infliction of emotional distress to reach the longer statute when the facts support a claim for a more traditional personal injury tort with mental pain and

suffering as part of the damages rather than severe emotional distress caused by outrageous conduct. There can be only one recovery for emotional distress on the same acts. It will either be caused as a result of an injury done to the plaintiff physically or it will be caused by outrageous conduct the purpose of which is to inflict emotional distress.

## C. This Case.

■ The first question that must be answered is what part of Tanya's emotional distress could properly be the subject of a claim? Until she was told that she was having a miscarriage, the fear and anxiety she felt was due to the physical symptoms she was experiencing, the cause of which is unknown. When she was told she was having a miscarriage, her grief and upset were a natural result of her apparent loss. This continued until the next day when her obstetrician told her that the baby was still alive. Her relief, however, was tempered by the fact that her obstetrician told her that the medication she took was dangerous for pregnant women because it causes contractions. This fear continued until the baby was born but did not live. Thereafter, she felt grief and loss for her child that no doubt continues to this day.

Tanya could reasonably claim emotional distress damages from the time she was told she was having a miscarriage when she arguably was not until the present time. She could claim that she suffered for about a day because she mistakenly thought that she had lost the baby when she had not; that she feared an actual miscarriage for about five days; and that the grief of her loss of the baby is past, present, and future. If any of that distress was caused by the actions of Dr. Geile, then there would be an arguable basis for liability.

This leads to a second question: Which tort covers her potential claims? To determine this, we must look to the facts, and the claim she actually pleaded in her complaint.

Appellants originally claimed both medical negligence and intentional infliction of emotional distress, but amended their complaint to pursue only the intentional infliction of emotional distress claim. To prevail on that claim, they must be able to show that Dr. Geile acted outrageously with intent or reckless disregard to inflict severe emotional distress on the Appellants. The record indicates that the distress can be divided into two periods.

First was the distress Tanya felt thinking her baby was dead when it was not. There is nothing in the record to indicate that she failed to tell Tanya that the fetus was still alive because she wished to inflict severe emotional distress on her. The facts of record indicate that there was at least a dispute as to whether Dr. Geile knew or should have known that the fetus was still alive, which arguably could support a theory of recklessly causing emotional distress. But nothing in the record actually establishes such knowledge. And the doctor could not act in reckless disregard of something she did not know. On this record as to this first time period, the Appellants cannot cross the first hurdle in bringing an intentional infliction of emotional distress claim by establishing the requisite state of mind. If Dr. Geile did not act with intent or reckless disregard of Tanya's right to be free from outrageous conduct causing emotional distress, then this emotional distress, though obviously painful, is not compensable under this claim.

Second was the period of time from when Tanya learned the baby was alive after she had taken the Methergine and going forward. This encompasses her fear of losing the baby and its actual loss. This distress arguably was due to Dr. Geile giving the Methergine, and this act, if it

were causative, goes to the level of the doctor's competence. The facts of both time periods present a classic situation of medical negligence. If Dr. Geile violated the standard of care in treating Tanya by improperly giving her the drug, then the question would be whether that violation caused the distress and the miscarriage. The personal injury would be having a miscarriage from taking Methergine. This cannot give rise to a claim for intentional infliction of emotional distress because the act complained of—giving the Methergine inappropriately—is an act of negligence causing personal injury, for which emotional distress is only compensable as an element of damages stemming from the injury.

Since Appellants voluntarily dismissed their medical negligence claim by amending their complaint to pursue only the intentional infliction of emotional distress claim, summary judgment was proper. Appellants cannot maintain an intentional infliction of emotional distress claim on the facts of this case.

The summary judgment actually granted by the trial court, however, was in response to the second summary judgment motion. For the sake of that motion only, Appellees made several stipulations admitting all the elements of the tort of intentional infliction of emotional distress, which included admitting that Dr. Geile acted in an intentional or reckless manner to cause only the emotional distress. With those admissions, summary judgment was arguably not proper. By these admissions, Appellees denied that there was a cause of action for malpractice, since Dr. Geile's behavior could not be both intended to cause only emotional distress and only personal injury for the same act. In so making these admissions, Appellees demonstrated a misunderstanding of *Rigazio*.

In *Rigazio*, the court specifically found that the defendant acted outrageously and caused emotional distress, but that the emotional distress was not the intent of his actions; his intention was sexual self-gratification resulting in the tort of battery. That case, as set forth above, stands for the proposition that if a set of facts establishes a traditional tort, by definition it *cannot* establish intentional infliction of emotional distress. In a traditional tort, there is an impact on the victim that may or may not cause mental distress. At the time of *Craft*, there was no tort that allowed recovery for mental distress standing alone when caused by outrageous conduct with no physical impact. But where severe emotional distress is caused by outrageous conduct, the Court determined as a matter of policy that compensation should be available and allowed the gap-filler tort of intentional infliction of emotional distress.

Nonetheless, there had been a prior motion for summary judgment that the trial court had denied but that should have been granted for the reasons stated in this opinion, which argued that Dr. Geile's conduct did not meet the elements of the tort of intentional infliction of emotional distress. And, regardless of the misguided stipulations for the second summary judgment motion, the *facts* do establish that summary judgment is proper because the doctor's conduct was properly the subject of a traditional tort claim.

### III.  Conclusion

For the reasons stated above, the Court of Appeals is affirmed.

All sitting.  All concur.