Tammy KASTOR, et al., Plaintiffs,

v.

**CASH EXPRESS OF TENNESSEE, LLC, Defendant.**

Civil Action No. 3:14–CV–432–JGH.

United States District Court, W.D. Kentucky, at Louisville.

Signed Jan. 8, 2015.

Jennifer Leigh McCarty, Abney & McCarty, PLLC, Louisville, KY, for Plaintiffs.

Craig P. Siegenthaler, Megan R. U'Sellis, Fisher & Phillips LLP, Louisville, KY, for Defendant.

### MEMORANDUM OPINION AND ORDER

JOHN G. HEYBURN, Senior District Judge.

This case involves quite unusual factual circumstances which then present novel legal questions concerning the Family and Medical Leave Act. First, in light of *Thompson v. North American Stainless, LP,* 562 U.S. 170, 131 S.Ct. 863, 178 L.Ed.2d 694 (2011), does the FMLA allow third party retaliation suits? And if so, what is required for a plaintiff to bring such a suit? Second, does the FMLA preempt a state claim for intentional infliction of emotional distress arising from conduct made unlawful by the FMLA? The Court will consider these questions in turn.

## I.

Plaintiffs Tammy Kastor and Lisa Nevitt worked for Defendant Cash Express of Tennessee, LLC as store managers at different locations.[1] In early 2013, Kastor learned that her four-year-old daughter needed open-heart surgery. As a result, she needed to take an extended leave of absence. She applied for and was granted FMLA leave for March and April 2013.

On April 12, while Kastor was on leave, she was contacted by her District Manager, Natasha Davis, and told she was being fired. The purported reason for her termination was a misdemeanor DUI conviction from January 2013. Davis claimed that Cash Advance discovered the conviction during a random background check performed during Kastor's leave of absence. Kastor is not aware of any prior occasions when Cash Express performed a random background check into her or any other current employee.

Kastor retained legal counsel following her termination and sent a letter to Cash Express on June 18, 2013, to question Cash Express's motives for firing an employee on FMLA leave. Counsel asserted that Kastor knew of at least one other Cash Express employee who had a felony conviction at the time of that employee's hiring but was nevertheless allowed to continue work. Though the letter did not specify any names, Kastor claims she was referring to Lisa Nevitt.

On June 19—just one day after Kastor's counsel sent this letter—Shannon Watson (Regional Manager) and Jeff Olsen (President) randomly visited Nevitt at work to interview her for the position of District Manager—a position for which Nevitt had not applied and had not expressed any interest in taking. Nevitt told Watson she didn't want the job.

On July 10, Watson told Nevitt she was being terminated because of a prior felony conviction that Cash Express discovered during its unsolicited interview for the District Manager position. Nevitt protested that she had already disclosed this conviction (and that she was on probation) on her application and during her interview over two years prior. Cash Express's CEO admitted as much; and, of course, he hired Nevitt anyway and allowed her to work for over two years. Nevitt believes that Cash Express really fired her after realizing she would be a harmful comparator in Kastor's impending FMLA retaliation suit.

Following their terminations and fruitless pleas with Cash Express management, Kastor and Nevitt filed this lawsuit. Their Complaint alleges three causes of action: (1) retaliation in violation of 29 U.S.C. § 2165; (2) third party retaliation in violation of 29 U.S.C. § 2615; and (3) intentional infliction of emotional distress. Cash Express moved to dismiss Nevitt's third party retaliation claim and both Plaintiffs' intentional infliction of emotional distress claims.

## II.

To survive dismissal for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "[A] district court must (1) view the complaint in the light

---

1. To resolve this motion, the Court presents only the facts alleged in Plaintiffs' Complaint.

most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC,* 561 F.3d 478, 488 (6th Cir.2009) (citing *Gunasekera v. Irwin,* 551 F.3d 461, 466 (6th Cir.2009) (citations omitted)).

### III.

The Court first considers Cash Express's motion to dismiss Nevitt's third party retaliation claim. The ultimate issue is whether Nevitt, who never engaged in conduct protected by the FMLA, may nevertheless assert a retaliation claim against her employer.

This presents a statutory interpretation matter that neither the Supreme Court nor the Sixth Circuit has addressed. Two district courts have divided on the issue. In *Lopez v. Four Dee, Inc.,* No. 11–CV–1099, 2012 WL 2339289, at *2 (E.D.N.Y. June 19, 2012), the court noted that "[f]ew courts appear to have addressed the third party retaliation question precisely." It concluded: The Supreme Court "has recently determined that ... Title VII ... broadly 'prohibits any employer action that might well have dissuaded a reasonable worker from making or supporting a charge of discrimination,' including third party retaliation. The FMLA's antiretaliation provision is similarly expansive." *Id.* (quoting *Thompson,* 131 S.Ct. at 868) (citation omitted). *See also Augustus v. AHRC Nassau,* No. 11–cv–15, 2012 WL 6138484, at *9 (E.D.N.Y. Dec. 11, 2012) (same). Neither *Lopez* nor *Augustus* included or analyzed the "expansive" FMLA antiretaliation text.

The court in *Gilbert v. St. Rita's Professional Services, LLC,* 3:11–cv–2097, 2012 WL 2344583 (N.D.Ohio June 20, 2012) reached the opposite conclusion. The court began: "Although it is true that the FMLA often borrows from Title VII jurisprudence, there are limitations." *Id.* at *6. The Court emphasized that the Supreme

Court's decision in *Thompson* "rested its holding specifically on the broad 'person ... aggrieved' language of Title VII, language that is notably absent from the FMLA." *Id.* Without referring to the language in the FMLA's antiretaliation provision, the court concluded that "Congress's intentional omission of Title VII's broad language in the FMLA specifically prohibits" an interpretation that allows for third party FMLA claims based on *Thompson.* *Id.*

Neither of these opinions provides definitive answers. This Court will analyze the statutory text and Supreme Court precedent to determine: (A) whether a third party can bring a retaliation claim under the FMLA; (B) what is required of that third party; and (C) whether Nevitt satisfies the requirements.

### A.

The first question is whether a third party can ever assert such a claim under the FMLA. The text itself provides the answer. "The starting point in interpreting a statute is its language, for '[i]f the intent of Congress is clear, that is the end of the matter.'" *Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, 410, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993) (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Two FMLA provisions are at issue here: 29 U.S.C. § 2615 and 29 U.S.C. § 2617(a). Section 2615(a)(2) defines the relevant unlawful conduct: "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." Section 2617(a) creates the private right of action; before enumerating the available remedies, it provides: "Any employer who violates section 2615 of this title shall be liable to any eligible

employee affected...." As the text makes clear, these statutes are interdependent: to sue under section 2617(a), a plaintiff first needs to prove the defendant-employer violated section 2615.

Nevitt has asserted a plausible claim that Cash Express violated section 2615(a)(2) in its actions *against Kastor.* Though it may not seem immediately apparent from this text alone, the Sixth Circuit holds that section 2615(a)(2) "prohibits an employer from terminating an employee for taking FMLA-guaranteed leave." *Bryant v. Dollar General Corp.,* 538 F.3d 394, 398 (6th Cir.2008). At this stage of the litigation, then, Nevitt has sufficiently alleged that Cash Express violated section 2615(a)(2) by terminating Kastor for taking FMLA leave.

This creates yet another question: Can Nevitt use Cash Express's section 2615(a)(2) violation against Kastor to assert her own claim under section 2617? Cash Express would have this Court find that because Nevitt has not alleged a section 2615 violation with respect to any unlawful actions *against Nevitt,* she cannot assert her own claim under section 2617. But this is inconsistent with the text of section 2617. Cash Express has allegedly violated section 2615 by retaliating against Kastor, so it is therefore liable "to *any* eligible employee *affected* ...." 29 U.S.C. § 2617(a)(1) (emphasis added). Notably, this section *does not* limit an employer's liability to "*the* employee affected by the violation" or to "any employee *who has engaged in protected conduct.*" The statutory language is broader. Congress created a cause of action for "any eligible employee affected"; there is no basis for this Court to read in a requirement that the plaintiff herself actually engaged in protected conduct. So long as a plaintiff can show she was "affected" by Cash Express's section 2615 violation, she can bring a claim.

## B.

So what is required for an employee to be "affected" by an employer's FMLA violation? A Supreme Court decision interpreting similar language in Title VII is instructive. In *Thompson v. North American Stainless, LP,* 562 U.S. 170, 131 S.Ct. 863, 178 L.Ed.2d 694 (2011), the plaintiff (Thompson) was fired after his fiancée filed an EEOC complaint. The Court identified two questions presented: "First, did [the employer's] firing of Thompson constitute unlawful retaliation? And second, if it did, does Title VII grant Thompson a cause of action?" *Id.* at 867.

### 1.

With respect to the first question, the Supreme Court found that the employer's conduct did violate the substantive retaliation provision of Title VII. *Id.* at 867–68 (quoting 42 U.S.C. § 2000e–3(a)) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees because he has made a charge...."). In doing so, it applied a prior Title VII decision interpreting this language as prohibiting "any employer action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 868 (quoting *Burlington N. & S.F.R. Co. v. White,* 548 U.S. 53, 64, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)) ("We think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancée would be fired."). Moreover, the Court found "no textual basis for making an exception" to the broadly worded retaliation provision "for third-party reprisals." *Id.* It found that "Title VII's antiretaliation provision is simply not reducible to a comprehensive set of clear rules," so it declined "to identify a fixed class of relationships for which third-party reprisals are unlawful." *Id.* Still, the Court provided some guidance:

"We expect that firing a close family member will almost always meet the *Burlington* standard, and inflicting a milder reprisal on a mere acquaintance will almost never do so, but beyond that we are reluctant to generalize." *Id.*

The first question in Nevitt's case is slightly different. Unlike the employer in *Thompson,* Cash Express fired both the employee who engaged in protected activity (Kastor) and the employee alleging retaliation because of another's protected activity (Nevitt). Nevertheless, the *Burlington* test would still require this Court to determine whether a reasonable worker in Kastor's position might well be dissuaded from engaging in protected activity if she knew that Nevitt would be fired. True, Kastor and Nevitt have no relationship like the engaged employees in *Thompson*; they even worked at different stores. And in dicta, the Court in *Thompson* suggested somewhat of a sliding scale to determine the unlawfulness of third party reprisals—terminating a close family member would "almost always" meet the standard while "a milder reprisal on a mere acquaintance" would almost never do. *Thompson,* 562 U.S. at 175, 131 S.Ct. 863. But this Court does not read *Thompson* to require a close personal relationship. In *Thompson,* the Court noted that "Title VII's antiretaliation provision is simply not reducible to a comprehensive set of clear rules." *Id.* The inquiry is more fact-specific; the test "will often depend upon the particular circumstances." *Burlington,* 548 U.S. at 69, 126 S.Ct. 2405.

█ In these circumstances, the question is whether a reasonable employee in Kastor's position might well be dissuaded from taking FMLA leave if she knew that, after exercising her rights, Cash Express would try to sabotage her efforts at bringing a lawsuit by firing the person she identified as a comparator. The Court finds that it would. In both situations, the plaintiffs' theories reveal hostility towards the exercise of protected rights. If true, Cash Express's actions would have a chilling effect on future Cash Express employees' exercise of rights. It would suggest to other employees that they could be fired without any form of redress. By Kastor and Nevitt's terminations, Nevitt has pled a plausible claim that Cash Express violated the antiretaliation provision of the FMLA.

### 2.

The next issue is whether Nevitt has a cause of action under the statute. This is similar to the second question the Court considered in *Thompson.*

Title VII provides that "a civil action may be brought … by the person claiming to be aggrieved." 42 U.S.C. § 2000e–5(f)(1). In interpreting this language, the Court analogized to another "common usage of the term 'person aggrieved' that avoids the extremity of equating it with Article III"—the Administrative Procedure Act. *Thompson,* 562 U.S. at 177, 131 S.Ct. 863 (citing 5 U.S.C. § 551 *et seq.*). The APA "authorizes suit to challenge a federal agency by any 'person … *adversely affected or aggrieved* … within the meaning of a relevant statute.'" *Id.* (quoting 5 U.S.C. § 702) (emphasis added). This means that "a plaintiff may not sue unless he 'falls within the zone of interests sought to be protected by the statutory provision whose violation forms the basis for his complaint.'" *Id.* (quoting *Lujan v. Nat'l Wildlife Fed.,* 497 U.S. 871, 883, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). Marginal interests or those inconsistent with the statutory purposes will not suffice. *See id.* (quoting *Clarke v. Sec. Indus. Ass'n,* 479 U.S. 388, 399–400, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987)).

In sum, the Court held that this test allows a cause of action for any plaintiff with an interest protected by the statutes, "while excluding plaintiffs who might technically be injured in an Article III sense but whose interests are unrelated to the statutory prohibitions in Title VII." *Id.* (citation and quotations omitted). Applying that test to the plaintiff's case, the Court concluded that Thompson was arguably within the zone of interests because he "was an employee of [the defendant], and the purpose of Title VII is to protect employees from their employer's unlawful actions.... Thompson is not an accidental victim of the retaliation.... To the contrary, injuring him was the employer's intended means of harming [his fiancée]." *Id.*

This Court believes that *Thompson* also applies in the FMLA context. Courts have "often rel[ied] on other employment discrimination law to fill the gaps in ... FMLA case law." *Bell v. Prefix, Inc.*, 321 Fed.Appx. 423, 428 n. 2 (6th Cir.2014). The relevant statutory language is similar; recall that Title VII uses "the person ... aggrieved" while the FMLA uses "any ... employee affected." And the *Thompson* Court borrowed from its earlier interpretation of an APA provision that allows suit by a "person ... adversely *affected or aggrieved.*" *Id.* (citing 5 U.S.C. § 702). If the APA standard worked to define "aggrieved" in Title VII, it should work to define "affected" in the FMLA.

Applying the zone of interest test to the FMLA prevents absurdity and a result Congress surely did not intend. Allowing anyone who is at all "affected" by a substantive FMLA violation and merely injured in the Article III sense would create an enormous class of plaintiffs who could bring FMLA claims. To modify an example from Justice Scalia's majority opinion in *Thompson*, "a shareholder would be able to sue a company for firing a valuable

employee for [taking FMLA leave], so long as he could show that the value of his stock decreased as a consequence." *Thompson,* 562 U.S. at 177, 131 S.Ct. 863. Or an employee forced to work harder because of a co-worker's improper termination might also be able to sue. While courts must exercise caution in straying from the literal meaning of statutory text, it seems clear that Congress did not intend such an absurdity here. Even the strictest of textualists must read statutes to prevent results that are clearly at odds with the intentions of Congress. Justice Scalia's standard in *Thompson* provides a more reasonable interpretation of the FMLA's antiretaliation provision.

### C.

Finally, the Court must determine whether Nevitt is within the zone of interest arguably sought to be protected by the FMLA. Congress defined the purpose of the FMLA as follows:

(1) to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity;

(2) to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition;

(3) to accomplish the purposes described in paragraphs (1) and (2) in a manner that accommodates the legitimate interests of employers;

(4) to accomplish the purposes described in paragraphs (1) and (2) in a manner that, consistent with the Equal Protection Clause of the Fourteenth Amendment, minimizes the potential for employment discrimination on the basis of sex by ensuring generally that leave is available for eligible medical reasons

(including maternity-related disability) and for compelling family reasons, on a gender-neutral basis; and

(5) to promote the goal of equal employment opportunity for women and men, pursuant to such clause.

29 U.S.C. § 2601(b). Cash Express made some good arguments in its two well-written briefs that Nevitt falls outside the FMLA's zone of interest as described in this purpose statement. For instance, Cash Express argues that the FMLA was enacted to protect employees who require leave for medical or family reasons; by contrast, Nevitt did not exercise any FMLA rights and did not participate in Kastor's taking of FMLA leave. Moreover, it argues that unlike Title VII, the FMLA was only intended to protect a small class of employees needing medical or family leave. Allowing people like Nevitt to sue would, it claims, mean that anyone who supposedly suffered a remote consequence due to another's exercise of FMLA rights could file a lawsuit.

This is a close call, but Nevitt need only establish that she is "arguably" within the zone of interest sought to be protected by the FMLA. This test "is not meant to be especially demanding," *Match–E–Be–Nash–She–Wish Band of Pottawatomi Indians v. Patchak*, —— U.S. ——, 132 S.Ct. 2199, 2210, 183 L.Ed.2d 211 (2012) (quotations omitted), and there are some strong arguments that a comparator like Nevitt is arguably within the FMLA's zone of interest. First, Nevitt was an employee of Cash Express, and like Title VII, the purpose of the FMLA "is to protect employees from their employers' unlawful actions." *Thompson*, 562 U.S. at 178, 131 S.Ct. 863. Second, and more specifically, the FMLA was enacted in part to protect employees who need leave. Part of this

protection is the ability to bring suit when an employer retaliates against one who uses this leave. It should follow that other employees unfortunate enough to be used as comparator evidence in these lawsuits also enjoy protections. Other provisions of the FMLA suggest the statute sought to protect those who would play a role in the enforcement of FMLA leave rights. For instance, 29 U.S.C. § 2615(b)(3) makes it unlawful "to discriminate against any individual because such individual ... is about to testify ... in any inquiry or proceeding relating to any right" provided by the FMLA.

Because Nevitt's version of the facts alleges that Cash Express intentionally terminated her because of her unwitting role in Kastor's impending FMLA suit, she is within the "zone of interest" sought to be protected by the FMLA.

IV.

The Court turns to the second half of Cash Express's partial motion to dismiss: Plaintiffs' intentional infliction of emotional distress claims.[2] The issue is whether the FMLA preempts the IIED claims because the IIED claims arise from the same allegedly unlawful conduct by Defendant. The Court begins by noting that the parties (and some courts) seem to be using the word "preemption" to mean two different things. The first is a matter of Kentucky substantive law; the second is a Supremacy Clause issue. This Court will consider each issue in turn.

A.

Under Kentucky law, IIED is largely a "gap-filler tort," though it can "stand alone on appropriate facts." *Childers v. Geile*, 367 S.W.3d 576, 582 (Ky.2012).

---

**2.** Kentucky courts also refer to intentional infliction of emotional distress as "the tort of outrageous conduct" or simply "outrage."

*See Childers v. Geile,* 367 S.W.3d 576, 578, 581 (Ky.2012).

As such, "[w]here the alleged conduct makes out a claim for another tort for which emotional distress damages are available, IIED is not a valid cause of action...." *Farmer v. Dollar Gen. Corp.*, No. 4:11–CV–00027–JHM, 2012 WL 4364108, at *7 (W.D.Ky. Sept. 24, 2012) (citing *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298–99 (Ky.App. 1993)). This is significant because, in the Sixth Circuit, damages for emotional distress are not recoverable under the FMLA. *See Brumbalough v. Camelot Care Ctrs.*, 427 F.3d 996, 1008 (6th Cir.2005). So the FMLA is not a bar to an IIED claim under Kentucky law because it does not allow damages for emotional distress.

A recent opinion by another court in this District conducted essentially the same analysis to conclude that an "IIED claim is not preempted by the FMLA[ ] because[,] although the claims may involve substantially the same conduct, the FMLA does not allow recovery of damages for emotional distress." *Marshall v. Rawlings Co., LLC*, No. 3:14–CV–00359, 2014 WL 4542426, at *3 (W.D.Ky. Sept. 11, 2014). This Court agrees with this holding as a matter of Kentucky substantive law but does not believe the *Marshall* opinion addressed the more complicated Supremacy Clause issue; that opinion did not discuss the various kinds of preemption or whether the text or purpose of the FMLA suggest that Congress intended exclusivity.

### B.

The Supremacy Clause presents an entirely different question. It provides that federal law is "the supreme Law of the Land ... anything in the Constitution or laws of any State to the contrary notwithstanding." U.S. Const., Art. VI, cl. 2. "State laws, therefore, may be overridden by conflicting federal laws, both expressly and impliedly." *Fulgenzi v. PLIVA, Inc.*, 711 F.3d 578, 584 (6th Cir.2013). The FMLA does not explicitly preempt any

state law, so the issue here is implied preemption. This "has been divided into 'field' preemption, where 'pervasive federal regulation 'preclude[s] enforcement of state laws on the same subject,' *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), and 'conflict' preemption,' which nullifies state law 'to the extent that it actually conflicts with federal law,' *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982)." *Id.* at 585.

■ This is a conflict preemption issue. "A state law actually conflicts with federal law if either 1) compliance with both is impossible, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or 2) the state requirement is an obstacle to 'the full purposes and objectives of Congress,' *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)." *Id.* "Recognizing federalism concerns, courts have typically applied a presumption against preemption, especially in fields that the states have 'traditionally occupied,' like health and safety." *Id.*

Here, to imply conflict preemption would require the Court to determine that Congress intended an exclusive remedial structure under the FMLA that would preempt state law claims arising from the same conduct. In other words, Congress deemed certain employer conduct unlawful under the FMLA and only allowed for specific remedies; for whatever reason, this scheme does not allow a plaintiff to recover compensatory damages for emotional distress. The question is, despite all this, can a state identify the conduct that is actionable under the FMLA, call it IIED, and allow a plaintiff to recover damages for emotional distress?

A survey of courts addressing the issue reveals a divide. A few district courts

around the country have found that the FMLA does not preempt such a claim. *See, e.g., Buser v. S. Food Serv., Inc.,* 73 F.Supp.2d 556, 571 (M.D.N.C.1999) ("[A] plain reading of [the FMLA's savings clause, 29 U.S.C. § 2951] and its sweeping language reveals that Congress did not intend the FMLA to supplant other claims, whether grounded in statutes or brought pursuant to state common law."); *Hunt v. Honda of Am. Mfg., Inc.,* No. C2–01–1188, 2002 WL 31409866, at *2 (S.D.Ohio Sept. 4, 2002) (rejecting that Congress "intended the remedies in the FMLA to be exclusive" and finding that the FMLA's savings clause "further reveals Congress's intent ... that federal law is not to preempt state claims"); *Aldridge v. Indian Elec. Co-op.,* No. 07–CV–633–HDC–PJC, 2008 WL 1777480, at *4 (N.D.Okla. Apr. 17, 2008) ("There is no provision within the FMLA which indicates that state law is preempted by its provisions.").

Many others have found that the remedies provided in the FMLA exclude separate remedies based on the same conduct. In a thorough and oft-cited opinion, Judge Gibson in the Western District of Pennsylvania compiled nearly 20 cases finding "that the FMLA provides the exclusive means of recovery for violation of rights created by the FMLA" before dismissing the plaintiff's section 1983 claim that would have allowed emotional distress or punitive damages. *Hayduk v. City of Johnstown,* 580 F.Supp.2d 429, 480–87 (W.D.Pa.2008). Many other cases have reached the same conclusion with respect to state common law claims. *See, e.g., McAllister v. Quality Mobile X–Ray Servs.,* No. 3:12–cv–0078, 2012 WL 3042972, at *6 (M.D.Tenn. July 25, 2012) ("Thus, to the extent that the plaintiff's [common law] retaliatory discharge claim is based on a violation of the FMLA, that claim is preempted."); *Alvarez v. Hi–Temp Inc.,* No. 03–C–2610, 2004 WL 603489, at *3–6 (N.D.Ill. Mar. 24, 2004) ("[I]t would be anomalous to allow a

plaintiff to bypass the limitations Congress placed on remedies for FMLA violations by permitting a common law tort claim to proceed premised solely on an FMLA violation. Allowing a plaintiff to pursue damages that are precluded by the FMLA conflicts with the accomplishment and execution of the full purposes and objectives of Congress."); *id.* at *5 ("Numerous courts have found that Congress intended the specific remedies set forth in § 2617[to] be the exclusive remedies available for a violation of the FMLA."); *Cavin v. Honda of Am. Mfg., Inc.,* 138 F.Supp.2d 987, 993–94 (S.D.Ohio 2001) (holding that the FMLA preempts a state common law claim "based on the rights granted by the FMLA but which circumvents and conflicts with the enforcement provisions and remedies set forth in the FMLA"); *Kiely v. Univ. of Pitt. Med. Ctr.,* No 98–1536, 2000 WL 262580, at *20 (Jan. 20, 2000) ("[T]he FMLA provides a comprehensive remedial scheme which evinces Congress' intent to preempt a state law tort claim premised upon a FMLA violation. Therefore, to the extent Plaintiff's negligence claim is premised upon actions of the Defendants violating the FMLA, said claim is preempted by the FMLA....").

■ This Court agrees with the analysis in the cases finding FMLA preemption. "[T]he FMLA specifically lists the types of damages that an employer might be liable for, and it includes damages only insofar as they are the actual monetary losses of the employee such as salary and benefits and certain liquidated damages." *Brumbalough,* 427 F.3d at 1007 (citing 29 U.S.C. § 2617(a)(1)). As such, "damages for emotional distress are not allowed under the FMLA." *Id.* at 1008. Congress developed a remedial scheme that does not allow damages for emotional distress. If a plaintiff could bring an IIED claim based on conduct that was made unlawful by the

FMLA, she could circumvent this exclusive remedial system that Congress created for FMLA violations. This would frustrate the entire purpose of developing an exclusive list of remedies.

The FMLA's savings clause does not change this analysis. It provides: "Nothing in this Act … shall be construed to supersede any provision of any State or local law that provides greater family or medical leave rights than the rights established under this Act...." 29 U.S.C. § 2651(b). Like the remedial provisions, what this section says is also significant for what it *doesn't say*. A common law IIED claim would not create any additional family or medical leave *rights* here; rather, it would only serve to give Plaintiffs additional remedies in the form of damages for emotional distress. Moreover, this Court agrees with the Tennessee court that found "that this express language plainly indicates that Congress did not intend to completely occupy the field of family and medical leave rights." *McAllister*, 2012 WL 3042972, at *7. But as that court noted, this is not a field preemption issue; rather, this Court holds that allowing a plaintiff to circumvent the FMLA remedial scheme would "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines*, 312 U.S. at 67,.61 S.Ct. 399.

Though an IIED claim "clearly can stand alone on appropriate facts," *Childers*, 367 S.W.3d at 581, that is simply not the case here. To state a claim for IIED, Plaintiff must show: (1) Defendant's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there is a causal connection between Defendant's conduct and the emotional distress; and (4) the emotional distress is severe. *Stringer v. Wal–Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky.2004). "Lia-

bility has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Humana of Ky. v. Seitz*, 796 S.W.2d 1, 3 (Ky.1990) (quoting Restatement (Second) of Torts, § 46, cmt. D (1965)).

Any level of outrageousness in Defendant's conduct stems from the alleged FMLA violations. If there is no FMLA violation, there is no "atrocious" or "utterly intolerable" conduct here; Defendant fired both Plaintiffs. This was certainly unpleasant and perhaps terribly timed, but as a matter of Kentucky law, "[t]he mere termination of employment and the resulting embarrassment do not rise to the level of outrageous conduct and resulting severe emotional distress necessary to support a claim for IIED." *Miracle v. Bell Co. Emergency Med. Servs.*, 237 S.W.3d 555, 560 (Ky.App.2007). Thus, without more than the terminations and the alleged FMLA violations, Plaintiffs' IIED claims fall short.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Plaintiff's third party FMLA claim is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Plaintiffs' Intentional Infliction of Emotional Distress claims is SUSTAINED and those claims are DISMISSED WITH PREJUDICE.