RENDERED: JUNE 18, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0691-MR

DUSTIN ALIFF; ROBERTA BROOKS;
JEFF CHISM, AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF JILL MONROE; JEMARYON
HART; MONSERRATE DE LA PAZ
LOPEZ JUSTINIANO, AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF IVAN RAMIREZ LOPEZ;
CHANCE PITTS; PATRICIA SCOTT,
AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF KAYLA MARIE
SMITH; KRISTIE WHITE; MONTEL
WIGGINS; DARRYL YONTS;
MARCO SANCHEZ; ELIJAH
JOHNSON; WILLIAM ALIFF;
MATTHEW BARBER; MARY
SMITH; HALEY CONDER;
MCKAYLA EMERY; RILEE
MATTHEW VALIANT; AND JOHN
LAWSON                                                          APPELLANTS


                        APPEAL FROM GRAVES CIRCUIT COURT
v.                      HONORABLE KEVIN D. BISHOP, JUDGE
                        ACTION NO. 22-CI-00362



MAYFIELD CONSUMER

PRODUCTS, LLC; JUSTIN
BOBBETT; AND LORENZO H. CASH                              APPELLEES


OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  KAREM, McNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Dustin Aliff; Roberta Brooks; Jeff Chism, as personal

representative of the Estate of Jill Monroe; Jemaryon Hart; Monserrate De La Paz

Lopez Justiniano, as personal representative of the Estate of Ivan Ramirez Lopez;

Chance Pitts; Patricia Scott, as personal representative of the Estate of Kayla Marie

Smith; Kristie White; Montel Wiggins; Darryl Yonts; Marco Sanchez; Elijah

Johnson; William Aliff; Matthew Barber; Mary Smith; Haley Conder; McKayla

Emery; Rilee Matthew Valiant; and John Lawson (collectively referred to as

appellants) bring this appeal from April 30, 2025, orders and May 20, 2025,

amended orders of the Graves Circuit Court, granting Mayfield Consumer

Products, LLC's, Lorenzo H. Cash's, and Justin Bobbett's motions to dismiss

pursuant to Kentucky Rules of Civil Procedure (CR) 12.02.  We affirm in part,

reverse in part, and remand.

## BACKGROUND

The tragic events underlying this appeal occurred on December 10, 2021, when an EF4 tornado completely destroyed a candle factory while some 110 workers were still inside. The candle factory was located six miles from Mayfield, Kentucky, and was owned by Mayfield Consumer Products, LLC (Mayfield Products). Many workers were injured, and eight workers were killed by the tornado. The appellants in this appeal were employed at the candle factory on the night of December 10, 2021, when the tornado struck the factory.

On December 8, 2022, Dustin Aliff, Roberta Brooks, Jeff Chism, as personal representative of the Estate of Jill Monroe; Jemaryon Hart; Monserrate De La Paz Lopez Justiniano, as personal representative of the Estate of Ivan Ramirez Lopez; Chance Pitts; Patricia Scott, as personal representative of the Estate of Kayla Marie Smith; Kristie White; Montel Wiggins; Darryl Yonts; Elijah Johnson; William Aliff; Matthew Barber; Mary Smith; Haley Conder; McKayla Emery, Rilee Matthew Valiant; and John Lawson filed a complaint against Mayfield Products and Justin Bobbett, a supervisor at the factory. Therein, it was alleged that supervisors at the candle factory prevented employees from leaving the factory before the tornado arrived. In particular, appellants asserted they had some three-hours' notice before the tornado hit the factory, and many wanted to leave the factory to seek safe shelter. Nonetheless, appellants maintain they were required to

continue working and were threatened with termination of employment if they fled before the tornado struck.

On December 29, 2022, an amended complaint was filed. Therein, Marco Sanchez was added as a plaintiff, and Lorenzo H. Cash, a supervisor at the factory, was added as a defendant. A second amended complaint was filed on August 8, 2024. In the second amended complaint, appellants alleged that supervisors physically stood in exits of the factory to prevent employees from fleeing before the tornado struck, and no worker was permitted to leave. In the complaints, appellants sought recovery under the torts of false imprisonment, intentional infliction of emotional distress, and "[s]tatutory [v]iolation[s]," including unlawful imprisonment. Amended Complaint at 30.

Appellees filed a motion to dismiss for failure to state a claim for which relief could be granted pursuant to CR 12.02. Appellees argued that the injuries suffered by appellants were incurred during their work at the candle factory and constituted workplace injuries. As workplace injuries, appellees asserted that the exclusive remedy provision of Kentucky Workers' Compensation Act (the Act) set forth in Kentucky Revised Statutes (KRS) 342.690(1) barred appellants' claims. Even if not barred thereby, appellees also argued that appellants failed to allege sufficient facts to sustain their tort claims, and/or some of the claims were filed untimely.

-4-

In response, appellants maintained that their claims were not barred by the exclusive remedy provision of the Act. Appellants argued that an exception to the exclusive remedy provision was applicable. Appellants also asserted that they raised sufficient facts upon their tort claims to survive the motion to dismiss and that the claims were not time-barred.

By the April 30, 2025, orders and May 20, 2025, amended orders, the circuit court determined that appellants' claims against appellees were barred by the exclusive remedy provision of the Act as set forth in KRS 342.690(1). Under KRS 342.690(1), the circuit court concluded that the exception found therein to the exclusivity provision was inapplicable. Additionally, the circuit court decided, *inter alia*, that appellants failed to set forth sufficient facts to maintain their claims of false imprisonment, statutory unlawful imprisonment, and intentional infliction of emotional distress. The court also held that claims against Cash were time-barred and that Sanchez failed to timely file his claims against appellees. This appeal follows.

**STANDARD OF REVIEW**

A motion to dismiss under CR 12.02(f) is granted only where "'it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim[.]'" *Hardin v. Jefferson Cnty. Bd. of Educ.*, 558 S.W.3d 1, 5 (Ky. App. 2018) (quoting *James v. Wilson*, 95 S.W.3d 875,

883-84 (Ky. App. 2002)).  The allegations of fact in the complaint are viewed as true, and resolution of the motion presents purely a question of law.  *Id.* at 5.  Accordingly, our review proceeds *de novo*.  *Id.* at 5.

## EXCLUSIVITY OF WORKERS' COMPENSATION ACT

Appellants contend that the circuit court erred by determining that the exclusive remedy provision of the Act precluded their claims against appellees.  For the following reasons, we agree.

The exclusivity provision of the Act is found in KRS 342.690(1) and provides, in relevant part:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. . . .  The exemption from liability given an employer by this section shall also extend to such employer's carrier and to all employees, officers or directors of such employer or carrier, provided the exemption from liability given an employee, officer or director or an employer or carrier shall not apply in any case where the injury or death is proximately caused by the willful and unprovoked physical aggression of such employee, officer or director.

Under KRS 342.690(1), the liability of an employer for a workplace injury is generally limited to remedies available under the Act.  Additionally, KRS 342.690(1) also grants fellow employees immunity from liability so long as the

worker's injury or death was not caused by "willful and unprovoked physical aggression" of a fellow employee. To come within the ambit of the immunity provision of KRS 342.690(1), the fellow employee, who causes the injury, must have been acting within the scope and course of his employment, and the injury must have arisen out of employment. *Roach v. Wilson*, 551 S.W.3d 450, 454-57 (Ky. App. 2017); *Haines v. BellSouth Telecomm., Inc.*, 133 S.W.3d 497, 500 (Ky. App. 2004); *Kearns v. Brown*, 627 S.W.2d 589, 591 (Ky. App. 1982). Simply stated, "the key factual issue in determining whether the immunity provided under KRS 342.690(1) applies is whether the fellow employee's act falls within the scope of his employment." *Haines*, 133 S.W.3d at 500.

Appellants allege that supervisors physically stood in exits of the factory to prevent workers from fleeing before the tornado struck and that employees were threatened with termination if they fled to seek safe shelter. We emphasize that appellants further allege that they were given some three-hours' notice before the tornado struck, and these alleged actions by the supervisors took place during this critical three-hour time period. The alleged acts of physically blocking the factory doorways appear to be far removed from and not incidental to ordinary acts performed by supervisors within the scope of their employment at the factory. *See Osborne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000); *Kearns*, 627 S.W.2d at 591. In fact, we can envision no ordinary duty of a supervisor that

-7-

would require a supervisor to physically block employees from fleeing the factory hours before an impending tornado. Appellees generally claim that the supervisors were properly instructing the workers to shelter in place. However, there is a marked difference between instructing employees to shelter in place and physically blocking employees from fleeing the factory to seek safe shelter. The former act may constitute an ordinary duty of a supervisor while the latter act may not. This is certainly a disputed fact in this case. When considering the facts alleged by appellants as true, we conclude that the circuit court erred by determining that appellants failed to state a claim upon which relief could be granted based upon the exclusivity provisions set forth in KRS 342.690(1).[1]

## FALSE IMPRISONMENT

Appellants argue the circuit court erred by granting the motion to dismiss their claim of false imprisonment. Again, appellants maintain that supervisors prevented employees from fleeing the plant to seek safe shelter before

---

[1] Appellants also argue that the exclusive remedy provisions set out in Kentucky Revised Statutes (KRS) 342.690(1) are not applicable as a result of the willful and unprovoked physical aggression of the supervisors in blocking the exits to prevent employees from leaving the building, citing *Jones v. Dougherty*, 412 S.W.3d 188, 193 (Ky. App. 2012). Appellees responded that this exception to the exclusive remedy provisions of the statute requires physical contact by the supervisors, which was not alleged by appellants in their complaint, as amended. Appellees Brief at 10-11. While this Court has not reached this issue in concluding that the exclusive remedy provisions of the statute are not applicable given the allegations asserted, we nonetheless acknowledge that such conduct might constitute an act of hostility that could likewise trigger the exception to the exclusive remedy provisions. Again, this issue also looks to disputed facts below.

the tornado struck by threatening to terminate their employment and by physically standing in the exits to the factory. By so doing, appellants claim that appellees intentionally detained them at the factory against their will by the use of direct threats. Although appellants wished to leave the factory, appellants assert that supervisors by their actions and words prevented them from doing so.

The tort of false imprisonment is "define[d] . . . as being any deprivation of the liberty of one person by another or detention for however short a time without such person's consent and against his will, whether done by actual violence, threats or otherwise." *Ford Motor Credit Co. v. Gibson*, 566 S.W.2d 154, 155 (Ky. App. 1977). Legal precedent recognizes that "direct restraint" is necessary, and such restraint "may arise out of words, acts, gestures, or the like, which induce a reasonable apprehension that force will be used if the plaintiff does not submit." *Id.* More specifically, "submission to the mere verbal direction of another unaccompanied by force, or threats of any character, does not constitute false imprisonment . . . . Bare words are insufficient to effect an imprisonment if the person to whom they are spoken is not deprived of freedom of action." *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 288 (Ky. App. 2009) (quoting *Gibson*, 566 S.W.2d at 156).

Taking the facts alleged by appellants as true, appellants wanted to flee the factory to seek safe shelter from the approaching tornado and repeatedly

requested permission to do so. Appellees informed appellants that they were not permitted to leave the factory and threatened to terminate the employment of any employee who fled. And importantly, supervisors were physically positioned at exits of the factory for the purported purpose of preventing employees from fleeing the factory. While it is true that direct physical force was not utilized, it is equally clear that words and acts were utilized by appellees to deprive employees of their freedom to flee the factory and were utilized to detain the employees in the factory. The physical presence of supervisors at exits could certainly induce a reasonable belief that force may have been utilized to prevent employees from fleeing through those exits. Therefore, we conclude that appellants alleged sufficient facts to state a claim for the tort of false imprisonment. Notwithstanding, we must address whether the claim is time-barred.

### Statute of Limitations

The proper statute of limitations for a claim of false imprisonment is found in KRS 413.140. It states, in relevant part:

> (1) The following actions shall be commenced within one
> (1) year after the cause of action accrued:
>
>> (a) An action for an injury to the person of the
>> plaintiff, or of her husband, his wife, child, ward,
>> apprentice, or servant[.]

KRS 413.140(1)(a); *Dunn v. Felty*, 226 S.W.3d 68, 70 (Ky. 2007). Under KRS 413.140(1)(a), a cause of action for false imprisonment must be filed within one year after it accrued. *Dunn*, 226 S.W.3d at 70.

It is undisputed that the tornado struck the factory on December 10, 2021, and the events underlying appellants' false imprisonment claim also took place on the same day. Thus, the action for false imprisonment accrued on December 10, 2021. Within one year therefrom, on December 8, 2022, all of the appellants, except Sanchez, filed a complaint against Mayfield Products and Bobbett alleging, *inter alia*, false imprisonment under the common-law. Subsequently, an amended complaint was filed on December 29, 2022. In the amended complaint, Sanchez was added as a plaintiff, and Cash was added as a defendant.

Under these procedural facts, the complaint filed on December 8, 2022, was timely filed; however, the amended complaint filed on December 29, 2022, as concerns Sanchez, was untimely, as it was filed more than one year from the date the false imprisonment claim accrued (December 10, 2021). KRS 413.140(1)(a). As a result, Sanchez's false imprisonment claim against appellees appears to be time-barred, as does appellants' claims of false imprisonment asserted against Cash. Nonetheless, appellants argue that the time for Sanchez to file the false imprisonment claim and appellants time to file claims against Cash

-11-

were tolled due to a class-action lawsuit filed in federal district court (*Johnson v. Mayfield Consumer Products, LLC*, No. 5:22-cv-00044-BJB-LLK (W.D. Ky.)) (*Johnson* action).[2]  Additionally, they argue the claim against Cash was timely under the relation-back rule of CR 15.03.

As for tolling, we believe that Sanchez's time to file claims against appellees and appellants' time to file claims against Cash was not tolled due to the class-action lawsuit filed in federal district court in the *Johnson* action.  In *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983), the United States Supreme Court recognized that the statute of limitations was tolled for putative class members upon the filing of a class action and continues until class certification was denied:

> We conclude, as did the Court in *American Pipe*, that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S., at 554, 94 S. Ct., at 766.  Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.  At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action.

---

[2] The *Johnson* action was originally filed in Graves Circuit Court in March of 2022.  The case was then removed to the United States District Court for the Western District of Kentucky.

*Id.* at 353-54.  The reasoning set forth by the United States Supreme Court is equally applicable to class actions filed in Kentucky, and we view same as persuasive:

> The *American Pipe* Court recognized that unless the statute of limitations was tolled by the filing of the class action, class members would not be able to rely on the existence of the suit to protect their rights.  Only by intervening or taking other action prior to the running of the statute of limitations would they be able to ensure that their rights would not be lost in the event that class certification was denied.  Much the same inefficiencies would ensue if *American Pipe*'s tolling rule were limited to permitting putative class members to intervene after the denial of class certification.  There are many reasons why a class member, after the denial of class certification, might prefer to bring an individual suit rather than intervene.  The forum in which the class action is pending might be an inconvenient one, for example, or the class member might not wish to share control over the litigation with other plaintiffs once the economies of a class action were no longer available.  Moreover, permission to intervene might be refused for reasons wholly unrelated to the merits of the claim.  A putative class member who fears that class certification may be denied would have every incentive to file a separate action prior to the expiration of his own period of limitations.  The result would be a needless multiplicity of actions – precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid.

*Id.* at 350-51 (footnote omitted).  Accordingly, this Court holds that the filing of a class action effectively tolls the applicable statute of limitations' period for all purported members of the class until class certification is denied; thereupon, the

purported members may join as plaintiffs in the pending action or file individual actions. *See id.* at 354.

Appellants claim that they "qualify as putative class members" in the *Johnson* action; therefore, "the commencement of that class action suspended the applicable statute of limitations as to all claims for all Appellants in this action." Appellants' Brief at 25. On the other hand, appellees argue that tolling is inapplicable because appellants filed the instant action before class certification issue was decided in the *Johnson* action.

We agree that a separate action should be filed only after class certification is denied because if the class is certified, no separate action is warranted. This requirement is pivotal as the reason for tolling a statute of limitations is to limit the "needless multiplicity of actions" filed by putative class members fearing denial of class certification. *See Crown, Cork & Seal Co., Inc.*, 462 U.S. at 350-51. However, in this case, appellants filed this action before class certification was addressed in the *Johnson* action. Thus, tolling of the statute of limitations did not occur in this case. *See Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 788-89 (6th Cir. 2016). Since Sanchez was not a party to the original action, we conclude that the one-year statute of limitations set forth in KRS 413.140(1)(a) for false imprisonment was not tolled for his claims.

As concerns the claims against Cash, the relation back rule, CR 15.03, "preserves an amended complaint from a defendant's statute of limitations defense by treating the amendment as if it had been filed at the time of the original pleading." *Phelps v. Wehr Constructors, Inc.*, 168 S.W.3d 395, 396 (Ky. App. 2004). CR 15.03 provides, in relevant part:

> (1) Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

> (2) An amendment changing the party against whom a claim is asserted relates back if the condition of paragraph (1) is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (a) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

To come within the purview of the relation back rule, it must be demonstrated:

> (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) *the second and third requirements must have been fulfilled within the prescribed limitations period.*

-15-

*Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 169-70 (Ky. 2003) (quoting *Schiavone v. Fortune*, 477 U.S. 21, 29-30 (1986)).  Importantly herein, the mistake requirement under CR 15.03 is a mistake in the identity of the party.  *Phelps*, 168 S.W.3d at 396.  In fact, the Kentucky Supreme Court has held that the "mistake concerning identity presupposes that in fact the reason for his not being named was a mistake in identity."  *Phelps*, 168 S.W.3d at 398.

In this case, appellants fail to allege and fail to demonstrate that Cash was not named in the original complaint due to a mistake in identity.  As a result, the relation back rule is inapplicable herein as concerns claims against Cash.

Consequently, we conclude that Sanchez's claim of false imprisonment is time-barred by the one-year statute of limitations set forth in KRS 413.140(1)(a), and appellants' claim of false imprisonment against Cash is, likewise, time-barred by the one-year statute of limitations set forth in KRS 413.140(1)(a).  Appellants' claims of false imprisonment against the remaining appellees are timely and may proceed.

**STATUTORY UNLAWFUL IMPRISONMENT**

Appellants also argue the circuit court improperly concluded that they failed to allege facts sufficient to sustain a claim of unlawful imprisonment under

KRS 509.020 or KRS 509.030.[3]  The underlying operative facts and allegations are the same as those for false imprisonment.  Additionally, appellants assert that appellees unlawfully restrained them in the factory when they sought to flee for safe shelter from the tornado.  Specifically, appellants allege that the supervisors utilized force, intimidation, and deception in preventing their departure from the factory.  Appellants also maintain that the supervisors knowingly, unlawfully, and substantially interfered with their liberty by confining them to the factory.  They argue, at minimum, their actions constituted intimidation as referenced in KRS 509.010(2).

Under KRS 509.020(1), unlawful imprisonment in the first degree is defined as:

> A person is guilty of unlawful imprisonment . . . when he knowingly and unlawfully restrains another person under circumstances which expose that person to a risk of serious physical injury.

And unlawful imprisonment in the second degree is set forth in KRS 509.030(1) as follows:

> A person is guilty of unlawful imprisonment in the second degree when he knowingly and unlawfully restrains another person.

---

[3] Appellants assert claims for alleged statutory violations under KRS 446.070, which authorizes a civil action "for violation of any statute."  KRS 509.020 addresses unlawful imprisonment in the first degree, and KRS 509.030 provides for the same violation in the second degree.

The term "restrain" is defined in KRS 509.010(2) as:

> [T]o restrict another person's movements in such a manner as to cause a substantial interference with his liberty by moving him from one place to another or by confining him either in the place where the restriction commences or in a place to which he has been moved without consent. A person is moved or confined "without consent" when the movement or confinement is accomplished by physical force, intimidation, or deception, or by any means, including acquiescence of a victim, if he is under the age of sixteen (16) years, or is substantially incapable of appraising or controlling his own behavior.

Taking the facts alleged by appellants as true, they sought to flee the factory to seek safe shelter from the impending tornado and repeatedly requested permission to do so. Supervisors informed appellants that they were not permitted to leave the factory and threatened to terminate the employment of any employee who fled. Additionally, supervisors were physically positioned at exits of the factory for the purported purpose of preventing employees from fleeing the factory. From the facts alleged by appellants, the supervisors knowingly used words and acts to substantially interfere with employees' freedom to flee the factory and unlawfully confined employees in the factory. Moreover, the confinement was directly accomplished through alleged intimidation by supervisors, and this intimidation consisted of the physical presence of supervisors at exits coupled with the supervisors verbally denying employees requests to leave the factory. At this stage of the litigation, we conclude that appellants alleged

sufficient facts to set forth a claim of statutory unlawful imprisonment. However, our inquiry does not end here; we must determine whether appellants timely filed the claim for statutory unlawful imprisonment.

**Statute of Limitations**

It is undisputed that KRS 413.140(1)(a) sets forth a one-year statute of limitations upon claims "for an injury to the person of the plaintiff." As previously set forth, the tort of false imprisonment is included within this statute. Appellants assert that the five-year statute of limitations in KRS 413.120(2) applies as the liability for the statutory claim of unlawful imprisonment was created by KRS 509.020 or KRS 509.030. We disagree.

KRS 413.120 provides, in pertinent part:

The following actions shall be commenced within five (5) years after the cause of action accrued:

. . . .

(2) An action upon a liability created by statute, when no other time is fixed by the statute creating the liability.

To determine when the five-year statute of limitations is applicable to a claim, the Kentucky Supreme Court has instructed that "'[t]he five-year limitation period provided by KRS 413.120(2) for claims brought pursuant to a statute does not apply to claims based on a statutory provision that 'merely codifies common law liability and does not create a new theory of liability.'" *Powers v.*

-19-

*Ky. Farm Bureau Mut. Ins. Co.*, 694 S.W.3d 361, 373-74 (Ky. 2024) (quoting

*Overstreet v. Kindred Nursing Ctrs. Ltd. P'ship*, 479 S.W.3d 69, 73-74 (Ky.

2015)).  Therefore, "'a theory of liability cannot be regarded as having been

"created by statute" as stated in KRS 413.120(2) if it otherwise existed at common

law prior to the enactment of the statute.'"  *Id.* at 374 (quoting *Overstreet*, 479

S.W.3d at 74)).  When the theory of liability preexisted enactment of the statute,

the correct statute of limitations is "the one that applies to the common law cause

of action."  *Id.* at 374 (quoting *Overstreet*, 479 S.W.3d at 74).[4]

In this case, appellants are seeking damages under KRS 509.020 or

KRS 509.030 resulting from their unlawful detention at the factory.  As discussed

earlier, appellants have also asserted a common-law claim for false imprisonment

and could recover damages thereon for their detention at the factory.  Both the

false imprisonment claim and the statutory claim under KRS 509.020 and KRS

509.030 provide liability for injury caused by an unlawful detention.  Thus, the

statutory unlawful imprisonment claim under KRS 509.020 or KRS 509.030 does

not create a new theory of liability; rather, it merely codifies the liability available

at common-law for false imprisonment.  As a consequence, we conclude that the

applicable statute of limitation is one year as provided in KRS 413.140(1)(a).

---

[4]There is an exception to this rule – where "the statute codifying a common law liability
expressly provides" for a limitations period therein.  *Overstreet v. Kindred Nursing Ctrs. Ltd.
P'ship*, 479 S.W.3d 69, 74 (Ky. 2015).

Therefore, for the reasons previously discussed as to the timeliness of the common-law false imprisonment claim, we, likewise, conclude that Sanchez's claim of statutory unlawful imprisonment is time-barred by the one-year statute of limitations set forth in KRS 413.140(1)(a), and appellants' claim of statutory unlawful imprisonment against Cash is also time-barred by the same limitations' period. Appellants' claims of statutory unlawful imprisonment against the remaining appellees are timely and may proceed.

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Appellants final substantive argument in this appeal is that the circuit court improperly determined that appellants failed to allege sufficient facts to support a claim of intentional infliction of emotional distress. Appellants argue that the supervisors' conduct was outrageous and caused them to suffer severe emotional distress and mental anguish. Appellants again rely upon the underlying facts previously discussed regarding the approaching tornado and the supervisors' conduct.

The elements of a claim of intentional infliction of emotional distress are "(1) intentional or reckless conduct; (2) that was outrageous or intolerable and offends against the generally accepted standards of decency and morality; (3) which caused emotional distress; and (4) the distress was severe." *Ogborn*, 309 S.W.3d at 293-94. This tort "imposes liability on one who by extreme and

-21-

outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Zurich Ins. Co. v. Mitchell*, 712 S.W.2d 340, 343 (Ky. 1986). The conduct must be truly outrageous and intolerable, and the resulting emotional injury must be severe and serious:

> [T]o ensure claims are genuine, . . . recovery should be provided only for "severe" or "serious" emotional injury. A serious or severe emotional injury occurs where a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case. Distress that does not significantly affect the plaintiff[']s everyday life or require significant treatment will not suffice.

*Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012).

In Kentucky, the tort of intentional infliction of emotional distress is only intended to be a "gap-filler" by providing a remedy when no other cause of action would do so:

> Taking into account the history of the tort of outrage [intentional infliction of emotional distress], and its reason for being as a "gap-filler" providing redress for extreme emotional distress in those instances in which the traditional common law actions did not, we believe that § 47 [of the *Restatement (Second) of Torts* (1965)] recognizes that where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie. Recovery for emotional distress in those instances must be had under the appropriate traditional common law action. The tort of

outrage was intended to supplement the existing forms of
recovery, not swallow them up.

*Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298-99 (Ky. App. 1993).

Thus, a claim of intentional infliction of emotional distress is not available where a

traditional tort can provide redress for emotional distress suffered by a plaintiff.

*Id.* To invoke the tort of intentional infliction of emotional distress, it must be

established that the intent of the defendant's outrageous conduct was to inflict

emotional distress; however, where the defendant intended "to invade some other

legally protected interest and only emotional distress results," the tort of intentional

infliction of emotional distress will not be applicable:

> In this tort, emphasis is placed on the emotional distress
> caused by the conduct. If physical injury is present, then
> as the *Restatement* [*Second of Torts* § 46(1)] and *Craft* [*v.
> Rice*, 671 S.W.2d 247 (Ky.1984)] make clear, the
> physical injury is significant only if it results from the
> mental distress, such as the chronic diarrhea and colitis
> Mr. Craft reported. In more traditional torts such as
> battery or other types of personal injury, the gravamen is
> the physical touching or injury, which may also result in
> emotional distress. To this extent, a significant
> difference in the tort of intentional infliction of emotional
> distress is the focus of the inquiry. In this tort, the
> conduct at issue must intentionally or recklessly be done
> to cause *emotional distress*. The specific right being
> invaded is the right to be free of emotional distress
> caused by another's outrageous conduct.

*Childers v. Geile*, 367 S.W.3d 576, 579-580, 582 (Ky. 2012).

In this case, the specific emotional distress and emotional trauma affecting each appellant is undoubtably unique; however, the facts alleged by appellants depict a truly horrific and terrorizing experience. After appellees allegedly intentionally restrained appellants from fleeing the factory to seek safe shelter, it is undisputed that the factory was directly hit by the EF4 tornado and was completely destroyed while the workers were still within its confines. Many workers, including appellants, were trapped under the rubble for prolonged periods of time. Three workers whose estates are parties to this appeal lost their lives. Some appellants allege both physical and psychological injuries. These facts indicate that a reasonable person would likely suffer severe and significant emotional distress, as was alleged in the complaint, as amended. However, while appellants have alleged facts showing outrageous and intentional conduct resulting in severe emotional distress from their wrongful imprisonment, appellants' claims for intentional infliction of emotional distress may not be maintained under the facts of this case.[5]

As previously determined in this Opinion, appellants have asserted the common-law claim of false imprisonment and have stated sufficient facts to state a claim for false imprisonment. Accordingly, appellants may be entitled to recover

---

[5] In Counts I and III of the amended complaint, appellants assert claims for emotional distress and mental anguish as a result of appellees' false and statutory unlawful imprisonment of appellants.

damages for their alleged emotional distress under the false imprisonment claim. As a "gap-filler" tort, an extreme emotional distress claim is not actionable where a common-law tort claim could provide relief. *See Rigazio*, 853 S.W.2d at 298-99.

Likewise, we cannot conclude that the supervisors' conduct of detaining the workers within the factory was intended to cause extreme emotional distress for the employees. Thus, we agree with the circuit court that the tort of intentional infliction of emotional distress is not actionable for appellants in this case, and the circuit court properly dismissed same.

## SUMMARY

In summation, we affirm the circuit court's dismissal of Sanchez's claims of false imprisonment and statutory unlawful imprisonment and of appellants' claims of false imprisonment and statutory unlawful imprisonment against Cash. We also affirm the circuit court's dismissal of appellants' claims of intentional infliction of emotional distress. We reverse the circuit court's dismissal of appellants' claims, except as to Sanchez, of false imprisonment and statutory unlawful imprisonment against Mayfield Products and Bobbett and remand for proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

John C. Whitfield
Madisonville, Kentucky

William L. Davis
Lexington, Kentucky

William D. Nefzger
Louisville, Kentucky

Amos N. Jones
Washington, D.C.

ORAL ARGUMENT FOR
APPELLANTS:

William D. Nefzger
Louisville, Kentucky

BRIEF FOR APPELLEES:

Russell B. Morgan
Rachel L. Sodée
Nashville, Tennessee

Megan U'Sellis
Louisville, Kentucky

Melinda Martin Ormsby
Mayfield, Kentucky

ORAL ARGUMENT FOR
APPELLEES:

Russell B. Morgan
Nashville, Tennessee